**Karen BURNS, Plaintiff, Appellant,**

v.

**David LORANGER, et al.,
Defendants, Appellees.**

No. 89–2103.

United States Court of Appeals,
First Circuit.

Heard March 7, 1990.

Decided June 29, 1990.

James B. Haddow with whom Professional Resource Associates, P.A., Craig J. Rancourt and Law Offices of Craig J. Rancourt were on brief, for plaintiff, appellant.

Mary Kahl, Mary Tousignant and James Boone with whom Edward Caron and Caron and Boone were on joint brief, for defendants, appellees David Loranger, Priscilla Murray and the City of Saco.

Before CYR, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

CYR, Circuit Judge.

After Karen Burns was subjected to a warrantless strip search by a local police officer acting under color of state law, she brought the present civil rights suit under 42 U.S.C. § 1983 to redress alleged violations of her fourth amendment rights. The United States District Court for the District of Maine entered summary judgment in favor of the defendant police officers on their qualified immunity claims and dismissed the companion section 1983 claim against the City of Saco.[1] We affirm.

## I

### FACTS

On October 3, 1986, defendants David Loranger and Priscilla Murray, attached to the York County Cocaine Task Force, attended a briefing of law enforcement officers who were to participate in the execution of five search warrants later that evening. The warrants were read aloud at the briefing, and the officers were alerted that there would be strip searches. The Chief Deputy Sheriff of the York County Sheriff's Department instructed Deputy Sheriff Murray to remain on call to assist with any female suspects.

Plaintiff Burns was strip-searched during the execution of a warrant to search the Daniel Guarino residence.[2] The police had made two controlled drug buys from Guarino at his residence; one about a month before the search, the other the day before the search. For approximately two hours immediately prior to the execution of the search warrant, the police followed a car which was being driven by Guarino in the company of Burns. At one point the police saw the Guarino car stop at the residence of Gene Michaud, a known co-

---

1. With due attention to the controlling considerations, *see United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Brennan v. Hendrigan,* 888 F.2d 189, 196 (1st Cir.1989), the district court properly declined to retain jurisdiction of the pendent state law claim for intentional infliction of emotional distress.

2. The State of Maine warrant authorized a premises search at 20 Staples Street, Old Orchard Beach, Maine, and "all persons found thereat," for "(1) cocaine; (2) records (drug, financial, telephone); (3) currency and other evidences of value; (4) firearms; (5) drug paraphernalia (sic); and (6) any other evidence of the crime of possession or distribution of co-

caine." Since we find probable cause and exigent circumstances for the warrantless strip search, we need not address the validity of the warrant provision directing the search of "all persons found thereat." *Compare Commonwealth v. Smith,* 370 Mass. 335, 348 N.E.2d 101 (upholding warrant to search apartment for drugs and "any person present," based on informant tip that occupants were selling contraband to persons regularly entering apartment), *cert. denied,* 429 U.S. 944, 97 S.Ct. 364, 50 L.Ed.2d 314 (1976) *with Wilson v. State,* 136 Ga.App. 70, 221 S.E.2d 62 (1975) (invalidating search warrant to search for illegal drugs at premises operated as liquor bar, including provision to search "all persons on the premises").

caine dealer, and watched as Guarino entered the Michaud residence.

Sergeant Loranger of the Saco Police Department was assigned to the Guarino residence search party. Loranger saw Guarino and Burns enter the Guarino residence together at about 10:30 p.m. Shortly thereafter Michaud entered the Guarino residence, followed a few moments later by the police, search warrant in hand. Immediately upon entering, Loranger saw Michaud, Guarino and Burns standing near, and facing, one another, at the kitchen table; Loranger saw Guarino handing cash to Michaud as Michaud gave Guarino a small plastic baggie containing cocaine. Michaud ran to another door, but was blocked by other officers entering the premises. Guarino and Michaud were arrested, handcuffed, searched, and later removed from the premises.[3] The ensuing searches disclosed approximately $6,000 in cash, small amounts of cocaine and hashish, drug records, and drug paraphernalia.[4]

All members of the search party were male police officers. Before being strip-searched, Burns twice asked if she could use the bathroom, but was refused permission to do so. Burns states that Sergeant Loranger summoned Deputy Sheriff Priscilla Murray to 20 Staples Street to conduct the strip search.[5] Soon after Murray arrived at the Guarino residence she escorted Burns to a private bedroom where she conducted a visual strip search, with no one else present. No body cavity search was performed. The only tactile contact occurred when Murray searched plaintiff's coiffure for contraband; none was found.[6]

II

## DISCUSSION

In *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions [ ] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." More recently, in *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Court refined the appropriate qualified immunity inquiry in a civil rights action against a law enforcement officer involved in a warrantless premises search.

> The contours of the right [allegedly violated] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640, 107 S.Ct. at 3039 (citation omitted).

Thus, appellate assessment of a qualified immunity claim is apportioned into two analytic components. First, if the right asserted by the plaintiff was "clearly established" at the time of its alleged violation, we are required to assume that the right was recognized by the defendant offi-

3. The record does not indicate, nor is it alleged, that Burns was handcuffed. Initially she was placed on the kitchen floor along with Guarino and Michaud. After that she was allowed to sit at the kitchen table while the officers searched the premises.

4. An elderly man was found in a different room of the Guarino residence and was released without having been searched. From the kitchen table the police seized a small framed mirror, bearing a white-powder residue. A small scale was seized from a shelf near the kitchen sink.

5. The record does not enable a definitive determination as to whether it was Loranger or an-

other police officer who instructed Murray to conduct the strip search. No matter, for present purposes we credit plaintiff's version of the facts. *See, e.g., Rossy v. Roche Products, Inc.,* 880 F.2d 621, 624 (1st Cir.1989) (we review a grant of summary judgment in the light most favorable to the nonmoving party and indulge all inferences in favor of that party).

6. Although there can be no question that a strip search, by its very nature, constitutes an extreme intrusion upon personal privacy, as well as an offense to the dignity of the individual, Burns does not suggest that she was strip-searched in an unnecessarily intrusive *manner.*

cial, *see Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Rodriguez v. Comas*, 888 F.2d 899, 901 (1st Cir.1989); second, we will deny the immunity claim if a reasonable official situated in the same circumstances should have understood that the challenged conduct violated that established right, *see Anderson*, 483 U.S. at 640–41, 107 S.Ct. at 3039; *Rodriguez*, 888 F.2d at 901.

### Clearly Established Law

■ At the time of the constitutional violation asserted in the present case, clearly established fourth amendment law entitled Burns to be free from any unreasonable search of her person. *Blackburn v. Snow*, 771 F.2d 556, 569 (1st Cir.1985) ("It can hardly be debated that ..., in 1977, [there was] a 'clearly established' Fourth Amendment right to be free of unreasonable [strip] searches."). Then, as now, however, a warrantless search was permissible, in exigent circumstances, where there was probable cause to believe that evidence would be found, *United States v. Moore*, 790 F.2d 13, 15 (1st Cir.1986) (decided May 9, 1986), unless the scope of the search did not comport with the justification for its inception, *New Jersey v. T.L.O.*, 469 U.S. 325, 341, 105 S.Ct. 733, 742, 83 L.Ed.2d 720 (1985).

### Objective Reasonableness

■ We weigh the objective reasonableness of the challenged conduct of the defendant officers against the clearly established fourth amendment strictures governing warrantless searches in the actual circumstances confronting the officers.[7] *Moore*, 790 F.2d at 15.

### A. Probable Cause

There was probable cause to search Burns if, " 'given all the circumstances, there [was] a fair probability that contraband or evidence [would] be found....' " *Moore*, 790 F.2d at 15 (quoting *United States v. White*, 766 F.2d 22, 25 (1st Cir. 1985)). " 'In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)).

■ Upon witnessing the commission of a felony offense in Burns' immediate presence, Sergeant Loranger possessed sufficient reliable information to support an objectively reasonable belief that there was a fair probability that readily-disposable incriminating evidence would be found on her person. *See Moore*, 790 F.2d at 15. Burns was in the immediate presence of Guarino and Michaud, both known drug dealers, as they exchanged money for cocaine. The police possessed information that Guarino's girlfriend was a seller and user of drugs. Earlier that day, Burns and Guarino had been riding around together for more than two hours. They had left the Michaud residence just minutes before Michaud appeared at the Guarino residence. On two

---

7. Sergeant Loranger instructed Deputy Sheriff Murray to strip-search Burns. At the briefing before the search, Murray had been alerted that she might be called upon to search female suspects. Under the "fellow officer rule" in force in this circuit, *see United States v. Zurosky*, 614 F.2d 779, 786 (1st Cir.1979) ("joint knowledge of appellants' activities could legitimately be imputed to all the agents acting in concert") (citing *Stassi v. United States*, 410 F.2d 946 (5th Cir. 1969) and *United States v. Romero*, 249 F.2d 371 (2nd Cir.1957)), *cert. denied*, 446 U.S. 967, 100 S.Ct. 2945, 64 L.Ed.2d 826 (1980), we impute Loranger's knowledge to Murray. *Cf. United States v. Hensley*, 469 U.S. 221, 232, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985) ("a flyer or bulletin ... issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense" may provide a sufficient basis for a "stop and frisk" by another police officer who is without personal knowledge of facts). *But cf. Whiteley v. Warden*, 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971) (where officers effected arrest in response to police radio bulletin for assistance in executing arrest warrant not based on probable cause, "an otherwise illegal arrest [could not] be insulated from challenge by the decision of the [officer requesting aid via bulletin] to rely on fellow officers to make the arrest").

previous occasions the police had made controlled drug buys from Guarino at the same premises, one only twenty-four hours earlier.

Despite the absence of any eyewitness evidence that Burns left Guarino's car, or that Michaud was at home, when Guarino entered Michaud's house, and notwithstanding her quarrel with the magistrate's finding that she was Guarino's girlfriend, we cannot ignore an entire amalgam of forceful inferences reasonably drawn from the uncontroverted *circumstantial* evidence: that she had been riding around in Guarino's car for an extended period of time before Guarino stopped at Michaud's home; that very soon thereafter all three were seen in Guarino's kitchen as Guarino and Michaud openly conducted a felonious cocaine distribution in her immediate presence; that on the kitchen table in front of them there was a mirror with cocaine residue; that a packet of cocaine was found on the kitchen floor; and that the premises search, and the searches of Michaud and Guarino, disclosed hashish, a substantial amount of cash, and drug paraphernalia.

Thus, it cannot be said that this was an attempt to predicate probable cause on a suspect's mere presence at the scene of the crime. *See Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979) ("[A] person's mere propinquity to others *independently* suspected of criminal activity does not, *without more,* give rise to probable cause to search that person.... [Probable cause to search a person] must be supported by probable cause particularized with respect to that person.") (emphasis added).

Therefore, we conclude, as a matter of law, that an objectively reasonable police officer in these circumstances could determine that there was a fair probability that Burns was either a drug dealer, or a drug user, on whose person a controlled substance would be found. *See Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039 ("The principles of qualified immunity that we reaffirm today require that Anderson be permitted to argue that he is entitled to summary judgment on the ground that, in light of

the clearly established principles governing warrantless searches, he could, as a matter of law, reasonably have believed that the search of the Creightons' home was lawful.").

### B. Exigent Circumstances

With probable cause to believe that Burns was concealing evidence on her person, the police were permitted to search her without a warrant if there was "such a compelling necessity for immediate action as [would] not brook the delay of obtaining a warrant." *United States v. Adams,* 621 F.2d 41, 44 (1st Cir.1980). *See also Moore,* 790 F.2d at 16 (exigent circumstances exist for warrantless entry of dwelling if officers reasonably believe evidence would be destroyed absent warrantless entry); *United States v. Edwards,* 602 F.2d 458, 468 (1st Cir.1979) (same).

The decisional standard governing summary judgment on a qualified immunity claim was set forth, in precisely the present context, in *Anderson v. Creighton.*

> We have recognized that it is inevitable that *law enforcement officials will in some cases reasonably but mistakenly conclude* that probable cause is present, *and we have indicated that* in such cases *those officials*—like other officials who act in ways they reasonably believe to be lawful—*should not be held personally liable. See Malley* [*v. Briggs,* 475 U.S. 335], at 344–345 [106 S.Ct. 1092, at 1097–98, 89 L.Ed.2d 271 (1986)]. *The same is true of their conclusions regarding exigent circumstances....*
>
> *The relevant question* in this case, for example, *is the objective* (albeit fact-specific) *question whether a reasonable officer could have believed Anderson's warrantless search to be lawful,* in light of clearly established law and the information the searching officers possessed.

483 U.S. at 641, 107 S.Ct. at 3039–40 (emphasis added).

As the evidence she was suspected of concealing on her person was not evanescent, Burns argues that the strip search was not conducted in exigent circumstances since she was under observation at all

times. Notwithstanding its facial appeal, Burns' argument cannot withstand scrutiny, as we consider not only that the probable cause alarm would have sounded loud and clear in these circumstances, but that no experienced police officer prudently could have ignored the likelihood that Burns' requests to use the bathroom portended a plot to dispose of incriminating evidence concealed on her person.

As the uncontroverted Loranger deposition states, it is common knowledge that *drug users and dealers* conceal controlled substances on their persons and often attempt to flush drugs down the toilet when law enforcement agents suddenly appear on the scene. There had been no opportunity for Burns or her companions to dispose of any drugs concealed on their persons after the police suddenly barged into the apartment, which surely would augment the legitimate concerns of an experienced officer that Burns' requests to use the bathroom were not prompted by the call of nature, but the desire to be alone.

A prudent police officer reasonably would expect Burns to recognize that it was unlikely that a male police officer would accompany her into the bathroom. Thus, Burns contributed significantly to the reasonable perception that there was considerable urgency for strip-searching her before she was able to dispose of the evidence the police reasonably believed she was concealing on her person, whether furtively while the police were occupied with the premises search and the other two suspects, or in the event the officers felt compelled to accede to yet further and more insistent requests to use the bathroom before a female officer could be brought to the scene.

We conclude, as a matter of law, that it would not have been "apparent" to an objectively reasonable police officer in these circumstances, *see Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039, that the warrantless search was not justified by exigent circumstances, *see id.* at 641, 107 S.Ct. at 3039. Although the defendant officers may have been mistaken in their belief that Burns may have been able to dispose of a small amount of cocaine if she were not strip-searched before a warrant could be obtained, we cannot say that their belief was not objectively reasonable in these extraordinary circumstances.[8] *See Moore*, 790 F.2d at 16 ("Because the sale and the arrests took place immediately outside the 364 Riverway apartment, the agents could reasonably believe that the failure of Hazzard and Cooper to return to the apartment promptly with the money could create a substantial risk that appellant would flee or destroy evidence. Under these exigent circumstances, the agents were justified in entering appellant's apartment without a warrant."); *Edwards*, 602 F.2d at 468 ("the possibility that evidence will be destroyed by defendants who have discovered government surveillance of their activities often has been recognized as a sufficient exigency to justify warrantless entry [into a person's home]").

A reasonable police officer could have concluded that there was probable cause to search Burns for concealed evidence. Furthermore, under these circumstances her importuning of the police for access to the toilet could prompt a reasonable officer to conclude that there was sufficient urgency to necessitate a warrantless strip search before Burns was able to dispose of incriminating evidence.

*Scope of Search*

A search may be rendered unreasonable unless its scope comports with the justification for its inception. *New Jersey v. T.L.O.*, 469 U.S. at 341, 105 S.Ct. at 742. It is common knowledge that controlled sub-

---

**8.** Burns attempts to distinguish such cases as *Cupp v. Murphy*, 412 U.S. 291, 296, 93 S.Ct. 2000, 2004, 36 L.Ed.2d 900 (1973) (dried blood under fingernails of murder suspect), on the ground that the evidence (cocaine) she was suspected of concealing on her person was not of an evanescent nature. But Burns never addresses the sensitive judgmental concerns which would confront a prudent police officer in the awkward predicament created by her requests to use the bathroom in these circumstances. She instead *assumes* that the only reasonable course of conduct open to the officers was to accept her *post facto* contention that she *could not* have rid herself of a small quantity of cocaine while seated at the kitchen table.

stances often are concealed on the person of users and dealers alike. Therefore, a reasonable police officer could have concluded that the scope of the strip search was not excessive.

*City of Saco*

 The section 1983 claim against the City of Saco was properly dismissed on the merits.[9] The conduct of the defendant officers was objectively reasonable. Thus, there could have been no causal connection between any deficient city policy, relating to the strip-searching of criminal suspects, and the alleged deprivation of plaintiff's fourth amendment rights. *See Kibbe v. City of Springfield,* 777 F.2d 801, 809–10 (1st Cir.1985) (city's failure to train must be proximate cause of alleged harm), *cert. granted,* 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 600 (1986), *cert. dismissed,* 480 U.S. 257, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987).

Furthermore, there was no evidence of any deficient city policy or custom regarding strip searches. *See City of Canton v. Harris,* 489 U.S. 378, ——, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989) ("Only where a municipality's failure to train its [police officers] in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."); *Santiago v. Fenton,* 891 F.2d 373, 381–82 (1st Cir.1989) ("weaknesses" in police training do not amount to a "policy of failure to train arising from deliberate indifference to citizens' constitutional rights"); *Bordanaro v. McLeod,* 871 F.2d 1151, 1156 (1st Cir.) (city custom or practice must be shown to have been "so well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice"), *cert. denied,* —— U.S. ——, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989). There was no actionable section 1983 claim against the City of Saco.

AFFIRMED.

---

9. Burns charged that the city failed to provide adequate strip-search training of its police officers, including Sergeant Loranger. Since the defendant police officers were held to have acted reasonably, however, the claim was dismissed because there was no causal connection between the city's training (or lack of it) and the alleged violation of plaintiff's rights. Plaintiff filed timely objection "to that portion of the Recommended Decision of the Magistrate on the motion of Defendants David Loranger, City of Saco and Priscilla Murray for summary judgment that concludes that the said defendants are entitled to *qualified immunity* against the claims of the Plaintiff." (emphasis added). Thus, we question whether the plaintiff has preserved this claim of error. *See* L.R. 28 (D.Me.1989) ("Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order...."). *See also* 28 U.S.C. § 636(b)(1).