REVISED, APRIL 26, 2000

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 99-50222

KIM MICHAEL HAINZE, ET AL.,

Plaintiffs,

KIM MICHAEL HAINZE,

Plaintiff-Appellant,

versus

ED RICHARDS, Sheriff; STEVE ALLISON;
and various unknown Williamson County Sheriff's deputies;
WILLIAMSON COUNTY, Texas; KEVIN HALLMARK;
SCOTT ZION, Williamson County
Sheriff's Deputies, individually and in their
official capacities,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas, Austin

April 7, 2000

Before POLITZ, GARWOOD, and DAVIS, Circuit Judges.

POLITZ, Circuit Judge:

Kim Michael Hainze appeals an adverse summary judgment in his action

under 42 U.S.C. § 1983, the Americans with Disabilities Act, and Section 504 of

the Rehabilitation Act. For the reasons assigned, we affirm.

## BACKGROUND

In the early morning hours of November 16, 1997, Alicia Cluck made a 911

call requesting that the police transport her suicidal nephew, Kim Michael Hainze, to a hospital for mental health treatment. Cluck advised that Hainze had a history of depression and currently was under the influence of alcohol and anti-depressants, carrying a knife, and threatening to commit suicide or "suicide by cop."[1] Uniformed Williamson County Sheriff's deputies, defendants-appellees Steve Allison, Kevin Hallmark, and Scott Zion, were given this information and dispatched in marked police cars to a convenience store where Hainze was located.

Upon arriving at the store the officers observed a man, believed to be Hainze, standing by the passenger door of a pickup truck occupied by two unidentified individuals. Hainze appeared to be holding the door's handle and talking to the individuals. He had a knife in his hand and was not wearing shoes, despite the cold temperature. Deputy Allison exited his vehicle, drew his weapon, and ordered Hainze away from the truck. Hainze responded with profanities and began to walk towards Allison. At this point, Zion, who was riding with Allison, and Hallmark had also exited their vehicles with their weapons drawn. Allison twice ordered Hainze to stop but Hainze ignored him. When Hainze was within four to six feet Allison fired two shots in rapid succession into Hainze's chest. Allison immediately called EMS. Hainze survived. Approximately twenty seconds elapsed from the time the officers pulled into the store parking lot until Hainze was shot.

---

[1]"Suicide by cop" refers to an instance in which a person attempts to commit suicide by provoking the police to use deadly force.

On August 21, 1998, Hainze was convicted by a Williamson County jury of aggravated assault with a deadly weapon for his conduct at the convenience store on November 16, 1997. The instant action was filed on November 20, 1997, before Hainze was charged with the criminal offense of which he was convicted. Hainze asserted claims against Williamson County Sheriff Ed Richards, the county, and Deputies Allison, Zion, and Hallmark in their individual capacities under 42 U.S.C. § 1983, alleging that they acted with deliberate indifference to his fourth and fourteenth amendment rights by using "excessive, unreasonable, and deadly force against him." He also asserted the same claim against Williamson County and Sheriff Richards in his official capacity for failing to adopt or enforce policies to adequately handle individuals who are mentally ill and in crisis situations, and to protect against the use of excessive and deadly force in such situations. Hainze sought a declaratory judgment, injunctive relief, and damages. In addition, Hainze brought assault and battery claims against the three deputies under Texas law.

Hainze also sought declaratory, injunctive, and compensatory relief under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act against Williamson County and Sheriff Richards in his official capacity. These claims were based on the defendants' alleged failure to establish a policy or train deputies to protect the well-being of mentally ill individuals, for having actually discriminated against Hainze on the basis of his disability, and for failing to conduct a self-evaluation, all of which Hainze contends were the direct

and proximate causes of the near-fatal shooting. Summary judgment was ultimately granted in favor of all defendants on all claims. Hainze timely appealed.[2]

## ANALYSIS

We review *de novo* a grant of summary judgment applying the same standard as the district court, viewing the facts and resolving all inferences in favor of the non-movant.[3] "The standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court."[4] Our review of the record and controlling law persuades that Hainze's claims fail as a matter of law and, thus, summary judgment was appropriate.

**Section 1983 claims:**

Hainze initially alleged that the defendants violated his rights under the fourth and fourteenth amendments. He has briefed the issue only with respect to the fourth amendment and his fourteenth amendment claim is deemed abandoned.[5] Defendants contend that Hainze's constitutional claims are barred as a matter of

---

[2]Christopher Cluck, one of the occupants of the pickup truck and Hainze's cousin, joined in Hainze's complaint and asserted various claims against the defendants. Cluck's claims were also dismissed. Cluck has not appealed.

[3]**James v. Sadler,** 909 F.2d 834 (5th Cir. 1990) (citation omitted).

[4]**Id.** at 837 (citing **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,** 475 U.S. 574 (1986)).

[5]**Rutherford v. Harris County, Texas,** 197 F.3d 173 (5th Cir. 1999) (citing **Dardar v. Lafourche Realty Co.,** 985 F.2d 824 (5th Cir. 1993)).

law under the Supreme Court's decision in **Heck v. Humphrey**[6] which held that a civil tort action, including an action under 42 U.S.C. § 1983, is "not [an] appropriate vehicle[ ] for challenging the validity of outstanding criminal judgments."[7]  **Heck** dictates that when a person such as Hainze brings a section 1983 claim against the arresting officers the district court must first "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."[8]  If so, the claim is barred unless the conviction has been reversed or declared invalid.[9]  In ruling on the summary judgment motion in the instant case, the district court held that **Heck** did not bar Hainze's suit because "a conviction for aggravated assault against a police officer does not necessarily preclude a finding of excessive force against the 'assaulter.' " The court went on to find, however, that the defendants were entitled to qualified immunity because their actions under the circumstances were objectively reasonable.

Subsequent to the district court's decision we held that, based on **Heck**, an excessive force claim under section 1983 is barred as a matter of law if brought by an individual convicted of aggravated assault related to the same events.[10]  In the case at bar, the jury found Hainze guilty of aggravated assault with a deadly

---

[6]512 U.S. 477 (1994).

[7]**Id.** at 486.

[8]**Id.** at 487.

[9]**Id.**  Hainze waived his right to appeal his conviction.

[10]**Sappington v. Bartee,** 195 F.3d 234 (5th Cir. 1999).

weapon. Thus, as in **Sappington,** the force used by the deputies to restrain Hainze, up to and including deadly force, cannot be deemed excessive.[11]  Concluding that Hainze has not established a violation of a constitutional right, we need not address whether the individual defendants were entitled to qualified immunity.[12]

Hainze's state law assault and battery claims against the officers are premised on the same basis advanced in support of his constitutional claim.  For the above noted reasons, we conclude that these causes of action also were properly dismissed.

**ADA/Section 504 claims:**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[13]  A "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government."[14]  The language of Title II generally tracks the language of Section 504 of the Rehabilitation Act of 1973,[15] and Congress' intent

---

[11]**Id.** at 237.  Like Hainze, Sappington was convicted of aggravated assault under Texas law.

[12]**Id.** at 236 (citing **Wells v. Bonner,** 45 F.3d 90 (5th Cir. 1995)).

[13]42 U.S.C. § 12132 (1994).

[14]42 U.S.C. § 12131(1)(B).

[15]29 U.S.C. § 794(a) (1994).  Section 504 provides that "[n]o otherwise qualified individual with a disability... shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to

was that Title II extend the protections of the Rehabilitation Act "to cover all programs of state or local governments, regardless of the receipt of federal financial assistance" and that it "work in the same manner as Section 504."[16]  In fact, the statute specifically provides that "[t]he remedies, procedures and rights" available under Section 504 shall be the same as those available under Title II.[17]  Jurisprudence interpreting either section is applicable to both.[18]  Title II further directs the Attorney General to promulgate regulations to effectuate the statute's purpose.[19]

A disabled plaintiff can succeed in an action under Title II if he can show that, by reason of his disability, he was either "excluded from participation in or denied the benefits of the services, programs, or activities of a public entity," or was otherwise "subjected to discrimination by any such entity."[20]  Neither party disputes that Hainze is a disabled person or that the Williamson County Sheriff's

---

discrimination under any program or activity receiving Federal financial assistance...." *Id.* A "program or activity" includes "all of the operations of... a department, agency, special purpose district, or other instrumentality of a State or of a local government...." 29 U.S.C. § 794(b)(1)(A).

[16]H.R. Rep. No. 101-485, pt. III at 49-50 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 472-73.

[17]42 U.S.C. § 12133.

[18]**Gorman v. Bartch,** 152 F.3d 907 (8th Cir. 1998) (citation omitted).

[19]42 U.S.C. § 12134(a). Those regulations have been codified at 28 C.F.R. § 35 (1999).

[20]42 U.S.C. § 12132; **Patrice v. Murphy,** 43 F. Supp.2d 1156 (W.D. Wash. 1999) (noting cases brought under either prong of the statute).

Department is a public entity. The broad language of the statute and the absence of any stated exceptions has occasioned the courts' application of Title II protections into areas involving law enforcement.[21] There is some disagreement, however, whether an arrest falls within the ambit of Title II,[22] and only one court has considered whether Title II applies to in-the-field investigations by police officers that may or may not lead to an arrest.

In **Gohier v. Enright**[23] the Tenth Circuit recently addressed a case strikingly similar to the one at bar. There the defendant, Officer Enright, responded to a disturbance call shortly after midnight and encountered Lucero, a paranoid schizophrenic, walking down the middle of the road clutching his right hand to his chest.[24] Enright exited his vehicle armed with his nightstick, pepper spray and a pistol, identified himself and asked Lucero to talk to him. Lucero continued

---

[21]*See, e.g.,* **Pennsylvania Dep't of Corrections v. Yeskey,** 524 U.S. 206 (1998) (holding that state prisons are a "public entity" under the ADA); **Gorman,** 152 F.3d at 912 ("Transportation of an arrestee to the station house is thus a service of the police within the meaning of the ADA."); **Lewis v. Truitt,** 960 F. Supp. 175 (S.D. Ind. 1997) (applying ADA to the arrest of a deaf man where arresting officers knew or should have known the man could not hear but nonetheless arrested him because he did not respond to officers appropriately).

[22]*See, e.g.,* **Rosen v. Montogomery County, Maryland,** 121 F.3d 154, 157 (4th Cir. 1997) ("[C]alling a[n]... arrest a 'program or activity' of the County... strikes us as a stretch of the statutory language and of the underlying legislative intent."); **Barber v. Guay,** 910 F. Supp. 790 (D.Me. 1995) (plaintiff's claim that he was denied proper police protection and fair treatment due to his disabilities during the course of his arrest is a valid cause of action under the ADA).

[23]186 F.3d 1216 (10th Cir. 1999).

[24]**Id.** at 1217.

walking and Enright ordered him to stop.[25] Lucero stopped for a moment, put his right hand behind his back and again began to approach Enright "at a 'fast pace.'" He then brought his right hand from behind his back and began swinging, in a stabbing motion, an object that Enright perceived to be a knife.[26] Enright ordered Lucero to "drop the knife" and attempted to retreat behind his vehicle. When Lucero reached Enright's vehicle he "either stepped or lunged toward Enright, making a stabbing motion with the object." Enright fired his pistol twice, killing Lucero.[27] The entire confrontation lasted between 20 and 30 seconds. As representative of Lucero's estate, Gohier asserted various claims against Officer Enright and the City of Colorado Springs, and sought to amend her complaint to include claims under Title II of the ADA.

After a careful analysis of arrest cases arising under Title II the Tenth Circuit held that Gohier could not establish a viable claim and affirmed the decision denying the motion to amend. First, the court noted that this case did not fit into the "wrongful arrest"[28] category of Title II claims because Lucero's conduct was not lawful conduct attributable to Lucero's mental illness that Enright perceived as unlawful activity. Indeed, Lucero's conduct of attacking Enright with a knife was

---

[25]**Id.** at 1218.

[26]**Id.**

[27]**Id.**

[28]The court used the term "arrest" to include arrests, pre-arrest investigations, and "violent confrontations not technically involving an arrest, as in this case." **Id.** at 1220.

criminal.[29]  Second, the court did not answer the question whether a valid cause of action exists under the second category of Title II arrest cases, the "reasonable accommodation" theory, because Gohier did not claim that Colorado Springs failed to train its police officers properly to investigate and handle situations involving mentally ill individuals in a manner that reasonably accommodates their disability.[30]  We, however, must resolve that question and, viewing the facts in the light most favorable to Hainze, now answer it in the negative.

Hainze first claims he was denied the benefits and protections of Williamson County's mental health training provided to its deputies when, in contravention of that training, Allison used excessive and deadly force to restrain him.  Specifically, Hainze alleges that Allison never engaged him in conversation to calm him, never tried to give him space by backing away, never attempted to defuse the situation, never tried to use less than deadly force, and never attempted to create any opportunities for the foregoing to occur.  We must conclude that this argument fails.  A necessary prerequisite to a successful claim under Title II is that a disabled person be denied the benefits of a service, program or activity by the public entity that provides such service, program or activity.[31]  Hainze was not denied the benefits and protections of Williamson County's mental health training *by* the

_____

[29]**Id.** at 1221-22.

[30]**Id.** at 1222.

[31]28 C.F.R. § 35.101 ("The purpose of this part is to effectuate subtitle A of title II..., which prohibits discrimination on the basis of disability *by* public entities.") (emphasis added).

10

County, Sheriff Richards, or the officers. Rather, Hainze's assault of Allison with a deadly weapon denied him the benefits of that program.

Second, Hainze claims that the county failed to reasonably accommodate his disability by "failing and refusing to adopt a policy protecting the well-being of [Hainze], as a person with a mental illness in a mental health crisis situation, thus resulting in discriminatory treatment from [the] sheriff's deputies."[32] He advances the same contentions as raised above, and stresses that the county's policy of treating mental health calls identical to criminal response calls and those not involving people with mental disabilities resulted in his discriminatory treatment.

Despite Hainze's claims, we hold that Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life. Law enforcement personnel conducting in-the-field investigations already face the onerous task of frequently having to instantaneously identify, assess, and react to potentially life-threatening situations. To require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk to innocents. While the purpose of the ADA is to prevent the discrimination of disabled individuals, we do not think

---

[32]While Hainze acknowledges that Williamson County has a mental health training program, he asserts that this policy was not enacted in response to the ADA and does not comport with its mandate.

11

Congress intended that the fulfillment of that objective be attained at the expense of the safety of the general public. Our decision today does not deprive disabled individuals, who suffer discriminatory treatment at the hands of law enforcement personnel, of all avenues of redress because Title II does not preempt other remedies available under the law.[33] We simply hold that such a claim is not available under Title II under circumstances such as presented herein.

When the officers reached the convenience store parking lot, Hainze was holding a knife and standing next to a pickup truck occupied by two persons. The police did not then know that the persons were unharmed and were related to Hainze. After being ordered to get away from the truck, Hainze immediately walked quickly towards Allison with the knife, ignoring Allison's repeated orders to stop. Allison did not shoot until Hainze was within a few feet. Approximately twenty seconds elapsed from the time the officers drove into the parking lot until Allison fired. Allison's actions were the result of a quick discretionary decision made in self-defense and for the safety of those at the scene. We are not persuaded that requiring Allison and other similarly situated officers to use less than reasonable force in defending themselves and others, or to hesitate to consider other possible actions in the course of making such split-second decisions, is the type of

---

[33]28 C.F.R. § 35.103. This section is entitled "Relationship to other laws" and provides in subsection (b):

> *Other laws.* This part does not invalidate or limit the remedies, rights, and procedures of any other Federal laws, or State or local laws (including State common law) that provide greater or equal protection for the rights of individuals with disabilities or individuals associated with them.

**Id**.

"reasonable accommodation" contemplated by Title II.

Once the area was secure and there was no threat to human safety, the Williamson County Sheriff's deputies would have been under a duty to reasonably accommodate Hainze's disability in handling and transporting him to a mental health facility.[34] That would have put this case squarely within the holdings of **Pennsylvania Dep't of Corrections v. Yeskey**[35] and the cases that have followed. But that was not the situation at bar.

Hainze's last contention is that Williamson County failed to conduct a self-evaluation of its existing policies and procedures to ensure that they were ADA compliant and that its failure to do so caused his injuries. Hainze also seeks declaratory and injunctive relief. Our review of the district court's denial of injunctive and declaratory relief is for abuse of discretion.[36]

The regulations issued by the Justice Department require all public entities, within one year of the regulations' effective date, to "evaluate its current services, policies, and practices, and the effects thereof, that do not or may not meet the requirements of [the regulations]" and to modify such services, policies, and practices to the extent necessary to bring them into compliance.[37] The regulations further provide an opportunity for interested persons to participate in the evaluation

---

[34]28 C.F.R. § 35.130(b).

[35]524 U.S. 206 (1998); **Gorman v. Bartch,** 152 F.3d 907 (8th Cir. 1998).

[36]**Gabriel v. City of Plano,** No. 98-41022, 2000 WL 96019 (5th Cir. Jan. 28, 2000).

[37]28 C.F.R. § 35.105(a).

13

process by submitting comments.[38]  A self-evaluation of Williamson County's existing physical facilities was performed in October, 1992, but no similar evaluation was conducted of the County's policies and procedures in responding to mental health disturbances and effectuating seizures of mentally disabled individuals.  Such an evaluation was clearly required of the County to ensure its compliance with the ADA.[39]  We do not suggest that the County's law enforcement officers received no training to deal with mental health situations.  During the course of their regular training, all officers are required to undergo some measure of mental health instruction, and some officers are certified to handle mental health related issues.  Allison was certified as a mental health officer based on his completion of a program offered by the County which included at least sixteen hours of such training.  Hainze's causation claim lacks merit.  As stated earlier, Hainze's injuries were caused by his own criminal actions, not Williamson County's failure to perform a self-evaluation.  Consequently, we hold that Hainze lacks standing to seek declaratory or injunctive relief.  A precondition to asserting a claim for a declaratory judgment is that a viable case or controversy exist.[40] Further, for an injunction to issue based on a past violation, Hainze must establish

_____

[38]28 C.F.R. § 35.105(b).

[39]28 C.F.R. § 35, App. A, Subpart B ("The general regulatory obligation to modify policies, practices, or procedures requires law enforcement to make changes in policies that result in discriminatory arrests or abuse of individuals with disabilities.").

[40]**Plumley v. Landmark Chevrolet, Inc.,** 122 F.3d 308 (5th Cir. 1997) (citing **Lawson v. Callahan,** 111 F.3d 403 (5th Cir. 1997)).

14

that there is "a real or immediate threat that he will be wronged again."[41]  Because Hainze cannot state a claim under either Title II or Section 504 the district court did not abuse its discretion in summarily denying the requested relief.

The judgment dismissing all claims against all defendants is AFFIRMED.

---

[41]**Plumley,** 122 F.3d at 312 (citing **City of Los Angeles v. Lyons,** 461 U.S. 95 (1983)).