Steven M. BIRCOLL, Plaintiff,

v.

**MIAMI–DADE COUNTY, a political subdivision of the State of Florida, Defendant.**

No. 05–20954–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Jan. 18, 2006.

Jay Mitchell Levy, Jay M. Levy, P.A., Miami, FL, for Plaintiff.

Eric Alexander Hernandez, Dade County Attorney's Office, Miami, FL, for Defendant.

***ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND III OF THE COMPLAINT***

MORENO, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment on Counts I and III of the Complaint (**D.E. No. 50**), filed on ***October 17, 2005.***

THE COURT has considered the motion, the response, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED.

### I. Factual Background

In this matter, Plaintiff Bircoll, a deaf man, filed suit against Defendant Miami–Dade County alleging that Defendant violated Plaintiff's rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 and the Rehabilitation Act of 1973, 29 U.S.C. § 794 during a stop, arrest, and brief detention on Driving Under the Influence (DUI) charges. In sum, Plaintiff alleges that throughout the arrest process, Defendant failed to establish effective communication because it did not provide Plaintiff with any auxiliary aids as are required by the ADA and RA. Defendant files this Motion for Summary Judgment arguing that Plaintiff has not alleged cog-

nizable ADA and RA claims and that Defendant is entitled to judgment as a matter of law. The relevant facts are as follows:

On April 7, 2001, Plaintiff was stopped by police officers around 3:00 a.m. after a Miami–Dade police officer observed Plaintiff commit several traffic infractions. At the outset of the stop, Plaintiff informed the officer that he could not understand him because Plaintiff is deaf. Plaintiff can, however, read lips. The officer asked Plaintiff to get out of the car so that they could speak face to face. Outside of the car, the officer smelled the odor of alcohol on Plaintiff's breath and saw that Plaintiff had red and watery eyes. *See* Officer Trask Aff. at ¶ 5. The officer then offered to use American Sign Language, but Plaintiff responded that he did not understand.

Once outside, the officer asked Plaintiff to perform a roadside sobriety test. The officer and Plaintiff communicated verbally during the test though Plaintiff alleges that he could not understand the officer. At the conclusion of the test, the officer found that Plaintiff was too impaired to drive. The officer arrested Plaintiff for DUI and transported him to the Substation around 3:30 a.m. No interpreter or other auxiliary aid was used at the scene of the DUI arrest.

At the Substation, Plaintiff met with another officer, who was made aware of Plaintiff's hearing impaired disability. This officer and the Plaintiff communicated verbally as the officer read aloud to Plaintiff the contents of the implied consent form for the Breath Test. No interpreter was used. The consent form was in written form and Plaintiff can read and write in English. Plaintiff refused to consent to the Breath Test and Plaintiff now alleges that he did not understand the officer who was reading the consent form to him.

Plaintiff was then transported to the Correctional Facility around 9:15 a.m., where he went through the intake process and the Facility's personnel were informed of Plaintiff's disability. Plaintiff was placed in a cell separate from the other inmates due to his disability until he could be classified for the general population. However, Plaintiff was released on bond at 2:16 p.m. before he could be moved into the general population. Plaintiff's total detention time from the time of his DUI arrest to his release was less than eleven hours.[1]

## II. Standard of Law

Summary judgment is authorized when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The burden then shifts to the party opposing the motion, who must set forth specific facts and establish the essential elements of his case on which he will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must present more than a scintilla of evidence for his position and may not simply rest upon mere allegations or denials of the pleadings. *Anderson v.*

---

**1.** Under Fla. Stat. § 316.193(9), immediate release of a drunk driver is prohibited.

*Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Lastly, a jury must be able reasonably to find for the non-movant. *Id.*

### III. Analysis

#### A. Count I

■ In Count I, Plaintiff alleges that Defendant violated Plaintiff's ADA rights by failing to provide him with an interpreter to assist him in communicating with Miami–Dade police and corrections officers and by failing to provide Plaintiff with a telephonic device for the deaf. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Therefore, to state a Title II ADA claim, "a plaintiff must allege: (1) that he is a 'qualified individual with a disability;' (2) that he was 'excluded from participation in or ... denied the benefits of the services, programs, or activities of a public entity' or otherwise 'discriminated [against] by such entity;' (3) 'by reason of such disability.'" *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir.2001).

Defendant does not contest that Plaintiff is a "qualified individual with a disability," nor does Defendant contest that Miami–Dade County is a "public entity" under the ADA. Defendant does, however, argue that the DUI arrest in question was not a "service, program, or activity" covered by the ADA. The Eleventh Circuit has not specifically addressed whether an arrest fits within the parameters of the ADA and the numerous circuit and district courts that have answered the question have come to different conclusions. In reconciling these different conclusions, one court noted, "the common thread that runs through all the decisions is that the determination is fact-specific." *Catlett v. Jefferson County Corrections Dept.*, 2000 U.S. Dist. LEXIS 21662, *17 (W.D.Ky.2000).

This Court, confirming the above observation, will follow the reasoning of the Fourth Circuit in *Rosen v. Montgomery County*, 121 F.3d 154 (4th Cir.1997), a case with strikingly similar facts to the case at bar.[2] In *Rosen*, a deaf plaintiff sued the County alleging ADA violations as a result of a DUI stop, arrest, and stationhouse detention. *Id.* at 156. Specifically, as in this case, the plaintiff alleged that "the police made no attempt to communicate in writing and that they ignored his requests for an interpreter and for a TTY telephone so he could call a lawyer." *Id.* The *Rosen* Court held, however, that the DUI arrest was not covered by the ADA and that "calling a drunk driving arrest a 'program or activity' of the County" was "a stretch

---

2. Plaintiff argues that *Rosen* is no longer good law based on the reasoning in *Calloway v. Boro of Glassboro Dept. of Police*, 89 F.Supp.2d 543 (D.N.J.2000). In *Calloway*, the court held that (1) since the Supreme Court applied the ADA to state and local corrections programs in *Pa. Dept. of Corrections v. Yeskey*, 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998), the *Rosen* court's rationale was no longer valid, and (2) that the *Rosen* court relied on *Gorman v. Bartch*, 925 F.Supp. 653 (W.D.Mo.1996), a case that was reversed by the Eight Circuit. This Court, however, believes that *Yeskey* does not affect the ultimate ruling or reasoning in *Rosen*.

The *Yeskey* Court held that state prisons and prisoners are covered by the ADA, despite the involuntariness of being a prisoner, because "modern prisons provide inmates with many recreational 'activities,' medial 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners." *Yeskey*, 524 U.S. at 209, 118 S.Ct. 1952. As *Rosen* holds, however, a drunk driving arrest, unlike a prison, provides no activities, services, or programs. Furthermore, the arrest itself cannot be considered a recreational activity, or a medical service, or even an educational or vocational program.

of the statutory language and the underlying legislative intent." *Id.* at 157. Furthermore, the Court reasoned, "the police do not have to get an interpreter before they can stop and shackle a fleeing bank robber, and they do not have to do so to stop a suspected drunk driver, conduct a filed sobriety test, and make an arrest." *Id.* at 158.

This logic has been echoed by other courts. In *Patrice v. Murphy*, 43 F.Supp.2d 1156 (W.D.Wash.1999), the court held that the arrest of a deaf woman on domestic violence charges was not subject to the provisions of the ADA. *Id.* at 1160. The court concluded that at the time of an arrest, "forestalling all police activity until an interpreter can be located to aid communication with the deaf protagonist would be impractical and could jeopardize the police's ability to act in time to stop a fleeing suspect, physically control the situation, or interview witnesses on the scene." *Id.* Using the same rationale, in *Hainze v. Richards*, 207 F.3d 795 (5th Cir.2000), the Fifth Circuit held that "Title II does not apply to an officer's on-the-street response to reported disturbances or other similar incidents ... prior to the officer's securing the scene and ensuring that there is no threat to human life." *Id.* at 801.

Based on this caselaw and the rationale behind it, it is clear that the ADA does not apply to on-the-street DUI arrest; however, Plaintiff points to the second part of the *Hainze* holding and argues that the on-the-street arrest and the subsequent detention, which is in a secure environment, should be analyzed separately. Further reading of *Hainze*, though, shows that Plaintiff's reliance is misplaced. The *Hainze* court explains that after the area was secured, the duty to accommodate the plaintiff's disability was only in "handling and transporting" the plaintiff following the arrest. *Id.* at 802; *see also Gorman v.*

*Bartch*, 152 F.3d 907, 909 (8th Cir.1998) (holding that the ADA applies to transporting an arrestee because in § 12202(a), "Congress noted that 'discrimination against individuals with disabilities persists in such critical areas as ... transportation' "). In this case, in contrast, Plaintiff alleges ADA violations in his detention; he does not allege that his handling or transportation to the stationhouse was unaccommodating or in violation of the ADA.

Additionally, Plaintiff cites to *McCray v. City of Dothan*, 169 F.Supp.2d. 1260 (M.D.Ala.2001) for support; however, *McCray* is also distinguishable from the case at hand. First *McCray* is factually distinct. In *McCray*, the deaf plaintiff alleged that police officers violated the ADA by asking him investigatory questions without an interpreter. *Id.* at 1272. The investigation was based on a complaint of private property damage and unlike Plaintiff Bircoll, the *McCray* plaintiff did not commit any criminal acts or arise the suspicions of the police. The *McCray* plaintiff's cause of action arose because he was arrested when his inability to hear the officer's questions was deemed uncooperative. *Id.* at 1270. Here, Plaintiff Bircoll was not arrested because his disability was mistaken for criminal conduct. Instead, the arrest was due to his erratic and suspicious driving. *See Thompson v. Williamson County*, 219 F.3d 555, 558 (6th Cir. 2000) (holding that if a mentally disabled plaintiff was denied any benefits under the ADA, "it was because of his violent, threatening behavior, not because he was mentally disabled").

Nevertheless, Plaintiff relies on the *McCray* holding that "police investigative activities are government programs" as long as they take place in a secure area. *Id.* at 1275. Even if true, in this case, no "police investigative activities" ever took

place after the actual arrest. At the stationhouse, police officers merely communicated the Breath Test consent form to Plaintiff and Plaintiff refused to consent. Thereafter, Plaintiff requested an attorney through his driver's rights card and the police were foreclosed from questioning him. *See* Bircoll Dep. at 61–66; *see also* Officer Townsend's Aff. at ¶ 12.

Therefore, it is clear that Plaintiff's arrest and the events arising from the arrest do not fall within the protections of the ADA. Congress's intent in passing the ADA was "to provide a clear and comprehensive national mandate to end discrimination against individuals with disabilities and to bring those individuals into the economic and social mainstream of American life." H.R.Rep. No. 101–485(III), at 23. A DUI arrest was not what Congress contemplated with this empowering language. If DUI arrestees are treated unfairly, they may seek a remedy in our rules and laws of criminal procedure, not the ADA. Based on the foregoing, Defendant is entitled to judgment as a matter of law and the Motion for Summary Judgment is granted as to Count I.

## B. Count III

In Count III, Plaintiff alleges that Defendant discriminated against Plaintiff on the basis of his disability and violated the Rehabilitation Act (RA) by denying Plaintiff access to a telephone for the deaf and an interpreter for communicating with law enforcement. Additionally, Plaintiff alleges that he was discriminated against when placed in solitary confinement due to his disability. The RA states that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. 794(a) (2005). The legal analysis of the RA is equivalent to that of the ADA mentioned above. *See Hainze,* 207 F.3d at 799 ("the remedies, procedures and rights available under [the RA] shall be the same as those available under Title II [of the ADA]").

Under the ADA and RA, a discrimination claim based on an arrest situation usually arises in two different situations: (1) when police wrongfully arrest someone by mistaking his disability for criminal conduct, and (2) when police properly investigate and arrest someone with a disability for a crime unrelated to the disability and then fail to reasonably accommodate the disability in the course of the investigation or arrest. *See Gohier v. Enright,* 186 F.3d 1216, 1220–21 (10th Cir.1999). Plaintiff argues this case fits within the wrongful arrest theory in that his speech impediment caused by his deafness lead the officer on the scene of the arrest to believe that Plaintiff had slurred speech from drinking. Additionally, Plaintiff argues that this case fits within the reasonable accommodation theory because the police should have provided Plaintiff with auxiliary aids.

■ First, as to the accommodation theory, this Court has already decided that Plaintiff was not entitled to auxiliary aids under the ADA or RA because Congress did not intend for a DUI stop, arrest, and subsequent brief detention to be covered by the ADA or RA. Second, as to the wrongful arrest theory, the evidence shows that the police arrested Plaintiff with probable cause. To have a cause of action for discrimination under the ADA, there must be a causal link between a plaintiff's disability and the wrongful arrest; i.e., no other probable cause for the arrest exists. *See Patrice,* 43 F.Supp.2d at 1161. In the Eleventh Circuit, "probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circum-

stances." *Kingsland v. City of Miami,* 382 F.3d 1220, 1226 (11th Cir.2004). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (quoting *Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir.1998)). In *Kingsland,* the court noted that an officer would satisfy the probable cause standard for an arrest if in his undisputed assessment, a driver had bloodshot eyes, slurred speech, and smelled of alcohol. *Id.*

In this case, the totality of the circumstances would lead an objectively reasonable police officer to believe he had probable cause to arrest Plaintiff for drunk driving. The evidence shows that the officer first observed Plaintiff make several traffic violations, including failing to stop at a stop sign, failing to stop at a flashing red light, and failing to respond immediately to the officer's overhead lights. *See* Trask Aff. at ¶ 4. Then during the stop, the officer smelled alcohol on Plaintiff's breath and noticed that Plaintiff had red and watery eyes. *Id.* at ¶ 5. Based on these circumstances, the officer then asked Plaintiff to perform a roadside sobriety test. Throughout the stop and the test, the officer was aware of Plaintiff's disability; however, the officer still deemed that Plaintiff failed the roadside test and arrested the Plaintiff. The arrest was not based on Plaintiff's disability and there is no causal connection between Plaintiff's disability and the arrest. Instead the arrest was based on the totality of the circumstances, including the traffic violations, the smell of alcohol, Plaintiff's red and watery eyes, and the failed sobriety test.

■ Furthermore, Plaintiff argues that his detainment following the arrest was discriminatory and that he is entitled to compensatory damages as a result. First, the Court will point out that Plaintiff's detainment was not discriminatory. Under Fla. Stat. § 316.193(9), "A person who is arrested for a violation of this section [on DUI] may not be released from custody ... until 8 hours have elapsed from the time the person was arrested." Therefore, Plaintiff was not detained because of his disability, he was detained because under Florida law, a DUI arrestee must be detained for a certain amount of time and since the arrest was valid so was the detainment. Second, Plaintiffs allegations about the detainment do not meet the legal standard necessary for compensatory damages.

■ According to the Eleventh Circuit, "plaintiffs who proceed under a theory of disparate treatment in [RA] actions must prove intentional discrimination or bad faith in order to recover compensatory damages." *Wood v. President and Trustees of Spring Hill College,* 978 F.2d 1214, 1219 (11th Cir.1992). In other words, "good faith attempts to pursue legitimate ends are not sufficient to support an award of compensatory damages under [the RA]." *Id.* While Plaintiff accepts this legal rule, Plaintiff argues that a showing of "deliberate indifference" can also prove intentional discrimination. The Eleventh Circuit has not ruled on whether the deliberate indifference standard applies to RA claims. However, this Court need not address that issue because the evidence in this case shows that Defendant's actions during the stop, arrest, and subsequent detention do not rise to the level of intentional discrimination or deliberate indifference.

■ Defendant did not intentionally discriminate, act in bad faith, or act with deliberate indifference during the initial stop and arrest. For example, as soon as

the arresting officer became aware of Plaintiff's disability, the officer allowed Plaintiff to get out of his car so they could speak face to face. Additionally, the officer at least attempted to communicate through sign language. Since Plaintiff responded to the officer during the stop, the officer believed in good faith that effective communication was established. In addition, Plaintiff read the implied consent form. During Plaintiff's detention, the corrections facility officers also acted in good faith. Those officers, who communicated with Plaintiff, also believed that their communication was effective. For instance, when the officer went over the breath test consent form with Plaintiff, he asked whether Plaintiff understood the form. Further, the corrections officers detained Plaintiff in solitary confinement as a good faith protective measure, not as a discriminatory act toward Plaintiff.

Based on the fact that probable cause to arrest Plaintiff existed and that the police acted in good faith in stopping, arresting, and detaining Plaintiff, Defendant is entitled to judgment as a matter of law on Count III. Furthermore, the evidence fails to show a causal connection between Plaintiff's disability and the whole DUI arrest situation. Instead, the DUI arrest was a result of Plaintiff's own acts unconnected to his disability.

### IV. Conclusion

Based on the foregoing there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law for Counts I and III. Therefore, Defendant's Motion for Summary Judgment is GRANTED.