# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2339

_____

| | | |
|---|---|---|
| Yeng Thao; Peter Yang; Michelle Yang, as co-trustees for the heirs and next of kin of Ki Yang, deceased, | * * * * | |
| Plaintiffs - Appellants, | * * | |
| v. | * * * | Appeal from the United States District Court for the District of Minnesota. |
| City of St. Paul, a municipal corporation; St. Paul Police Department, a public entity; William Finney, an individual; John M. Harrington, an individual; Michael Tharalson, an individual; Shannon Sills, an individual; Patrick Kellerman, an individual; John Does 1-5, | * * * * * * * * | |
| Defendants - Appellees. | * | |

_____

Submitted: January 10, 2007
Filed: April 2, 2007

_____

Before COLLOTON, BRIGHT, and GRUENDER, Circuit Judges.

_____

BRIGHT, Circuit Judge.

A St. Paul police officer shot and killed Ki Yang ("Mr. Yang"), a paranoid schizophrenic, in his home after Mr. Yang's family requested assistance from 911 and

a threatening incident ensued. Appellants, co-trustees for the estate of Mr. Yang ("Plaintiffs"), filed a lawsuit against the City of St. Paul, the St. Paul Police Department, and certain police officers (collectively, "Defendants") under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, 29 U.S.C. § 794(a), and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.12, subd. 1. The district court[1] granted summary judgment to the Defendants on all claims and Plaintiffs appeal only the district court's decision as to the ADA, the Rehabilitation Act, and the MHRA (collectively, the "Acts"). For the reasons set forth below, we affirm.

I.      Background

Mr. Yang was a paranoid schizophrenic. He apparently suffered from delusions and had previously been committed to and received treatment from mental health facilities. Although the district court concluded that Mr. Yang was not disabled within the meaning of the ADA, we assume for the purposes of this appeal that he qualifies as a disabled individual under the Acts and do not recount the disputed characterizations of his illness here.

On September 27, 2002, Peter Yang, Mr. Yang's son, called 911 because his father had barricaded himself in – and his family members out of – their shared home with shoelaces and coat hangers. Mr. Yang had refused his family entry into the home for three days because he believed they were trying to poison him. His family sought an ambulance to take Mr. Yang to the hospital "in order to prevent any disaster." In addition, some of the family members needed to access personal property in the house.

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

Peter Yang explained to the 911 dispatcher that Mr. Yang had a long history of mental illness. The dispatcher sent an ambulance to the home and also contacted the police department to request assistance with "an emotionally disturbed person." The dispatcher reported to police: "He locked his family outside, has a history of threatening to kill his family. He hallucinates, thinks someone is after him, trying to poison him. He has no weapons, except kitchen utensils, has a history of psychiatric problems. Medics are en route."

Two police officers, Shannon Sills and Mike Tharalson, arrived on the scene. Because the family warned the officers that Mr. Yang did not like police, the officers remained out of sight while other members of the family attempted to plead with Mr. Yang through a window. In the meantime, the officers instructed the medics to leave and contacted the shift patrol supervisor, Sergeant Pat Kellerman, for assistance. Kellerman arrived shortly thereafter.

The police officers determined that Mr. Yang was not an imminent threat to himself or others. Thus, they treated the circumstance as a domestic situation in which a party had been excluded from his home by a person whom the officers had been told had committed assault in the past. The officers convinced the family to forcibly access the home (and showed them how) and offered to accompany them to retrieve their belongings. Certain family members, who were still pleading with Mr. Yang through the window, reported to the others that Mr. Yang had retrieved a gun and was threatening his family. Those accessing the house assured the others that the gun merely was a BB-gun.

Once inside the house, Mr. Yang's wife asked Tharalson to take her husband to the hospital. He refused, explaining that Mr. Yang had not threatened anyone. Tharalson proceeded farther into the house and Mr. Yang appeared carrying a traditional Hmong *dot zuo* – a weapon that looked like a garden sickle – and a BB-gun. Mr. Yang shouted for the group to leave and Tharalson ordered Mr. Yang to

3

drop his gun. Armed with his weapons, Mr. Yang either ran or walked[2] toward and then lunged at Tharalson who, in response and in his defense, shot Mr. Yang repeatedly and fatally.

Plaintiffs filed a lawsuit against the Defendants and the district court granted summary judgment in favor of the Defendants on all claims. Plaintiffs appeal only the district court's decision as to the Acts. Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the nonmoving party. We review the district court's grant of summary judgment under the Acts *de novo.* See Gorman v. Bartch, 152 F.3d 907, 909 (8th Cir. 1998).

II.     Discussion

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[3] Plaintiffs argue that inadequate police training and policies with

_____

[2]The record contains varying descriptions of whether Mr. Yang walked or ran at Tharalson. Compare Appellee's Appendix ("AA") at 82-85 (deposition of Chang Yang) with AA at 110 (statements of Chang Yang). See also AA at 27-28 (deposition of Officer Tharalson).

[3]Likewise, the Rehabilitation Act provides that no "qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The MHRA prohibits discrimination "in the access to, admission to, full utilization of or benefit from any public service because of . . . disability." Minn. Stat. § 363A.12, subd. 1. The parties recognize that the analysis required by the ADA applies equally to all claims under the Acts. See Gorman, 152 F.3d at 912; Roberts By & Through

4

respect to mentally disabled individuals made an otherwise safe situation dangerous, which led to Mr. Yang's death, in violation of the Acts.

This court recently declined to extend the ADA to encompass failure to train liability in similar circumstances. See Sanders v. City of Minneapolis, 474 F.3d 523, 527 (8th Cir. 2007) ("It was not the City's failure to train its officers, but [the deceased's] apparent attempt to run over the officers that precipitated the shooting."); see also Hainze v. Richards, 207 F.3d 795, 801 (5th Cir. 2000) ("Title II [of the ADA] does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life."). But see Schorr v. Borough of Lemoyne, 243 F. Supp.2d 232 (M.D. Pa. 2003) (relying on the statutory history and remedial nature of the ADA to permit plaintiff to state claim under the ADA for failure to train police and modify police practices to accommodate for mentally ill subjects of involuntary commitment warrants).

The parties acknowledge that the City of St. Paul provided its police officers with *some* ADA training. Plaintiffs, however, dispute the adequacy of that training for responding to incidents concerning the mentally disabled. Without deciding the adequacy of the officers' training, or whether a municipality can be liable under the ADA for a "failure to train," we conclude that the Plaintiffs have failed to demonstrate that more "adequate" training to accommodate the mentally ill would have required a different response.

All parties concede that at the time the police arrived on the scene that day, Mr. Yang posed no apparent threat to himself or his family. By all accounts, Mr. Yang

---

Rodenberg-Roberts v. KinderCare Learning Ctrs., 86 F.3d 844, 846 n.2 (8th Cir. 1996).

sought to be left alone. His family members, out of concern for Mr. Yang and a desire to enter their home to retrieve their belongings, sought entry into the home.

The family indicated to police that Mr. Yang did not possess any dangerous weapons and no one believed that he possessed a weapon; no one understood that entry into the home would have resulted in a life-threatening situation. Both Michelle and Peter Yang stated that Mr. Yang had not threatened himself or others that day. Chang Yang explained that he had no reason to believe that his father possessed a weapon or that he would use a weapon against his family or the police. Zua Yang similarly answered in her deposition that she would never have expected Mr. Yang to have entered the room with a BB gun and a "garden sickle."

Plaintiffs have not shown that, even with more "adequate" training on responding to situations concerning mentally disabled individuals, the police would have ignored requests from the family to enter the home in light of the circumstances presented. Plaintiffs offered the testimony of one expert, Lou Reiter, a former police officer, who explained that adequate training under the ADA would have prompted police to contact mental health professionals or Mr. Yang on the telephone, but not to assist the family in forcibly entering into the home. The testimony of Plaintiffs' expert, however, presupposes that the police were given any indication that Mr. Yang presented a threat to himself or others. Reiter conceded in deposition testimony that, absent some wrongful act by Mr. Yang (like a threat of violence), the officers did not have a right to go inside the house and detain Mr. Yang.

The police officers faced two competing interests at the scene: Mr. Yang's and his family's. Minn. Stat. § 253B.05, subd. 2 provides that an officer may take a person into custody if the officer has reason to believe the person is mentally ill and *in danger of injuring himself or others if not immediately detained*. Even when viewing the circumstances in the light most favorable to the Plaintiffs, the police had no authority to disturb Mr. Yang, as he presented no threat to himself or his family at

that time.  Nonetheless, the family sought entry into the home either to retrieve their belongings or because they were concerned for Mr. Yang – or both.  The police's assistance to that end did not *create* a dangerous situation; unbeknownst to all, the situation was dangerous from the outset because Mr. Yang turned out to possess a dangerous weapon.  The police might have responded differently if they had known Mr. Yang possessed a dangerous weapon, but no reasonable jury could find based upon the facts presented by Plaintiffs that the police would have responded differently had they received other training under the ADA.

For the foregoing reasons, we affirm the decision of the district court.

_____