# United States Court of Appeals
# for the Fifth Circuit

---

No. 24-50397
Summary Calendar

---

United States Court of Appeals
Fifth Circuit

**FILED**

January 17, 2025

Lyle W. Cayce
Clerk

M. Patricia Cantu; Roberto Cantu,

*Plaintiffs—Appellants*,

*versus*

Austin Police Department; Michael Joseph, *Sergeant, Austin Police Department*; Jacob Beirowski, *Officer, Austin Police Department*; Robert Mattingly, *Officer, Austin Police Department*; Luis Alberto Camacho, III, *Officer, Austin Police Department*; Kyle Peterson, *Officer, Austin Police Department*; Julian Padro-Martin, *Officer Badge# 8243, Austin Police Department*; Christopher J. Knodel, *Officer, Austin Police Department*; City of Austin, Texas,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-84

---

Before Davis, Stewart, and Southwick, *Circuit Judges*.

Per Curiam:[*]

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-50397

After their son was fatally shot by law enforcement, Plaintiffs M. Patricia and Robert Cantu filed this action alleging, *inter alia*, claims under 28 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (ADA). The district court, on summary judgment, dismissed their § 1983 claims on qualified immunity grounds and their ADA claim as a matter of law. We AFFIRM.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Paul Cantu was "suicidal and suffering from mental distress" when the Austin Police Department (APD) encountered him on January 29, 2019. APD Sergeant Michael Joseph located Cantu's car off-road in a grassy field while responding to a service call around 1:40 a.m. that morning. Joseph parked behind the car and shined his spotlights on it. Cantu exited the driver's seat with a handgun drawn and aimed at the officer. Joseph drew his own weapon and exited his cruiser to engage Cantu. His body-camera footage shows that Joseph repeatedly ordered Cantu to drop the gun and to "get on the ground." Cantu ultimately knelt; he did not drop the gun, pointing it to his own head. For the next six minutes, Joseph urged Cantu to drop the gun, to no avail.

Joseph called for backup, saying there was a gun and requested a ballistic shield. At about 1:45 a.m., APD Officer Luis Alberto Camacho, III arrived and took a position "to provide lethal cover." About a minute later, APD Officer Robert Mattingly arrived with the ballistic shield and began to

---

[1] We recount the facts in the light most favorable to Cantu's parents, the nonmovants, except to the extent that their story is "blatantly contradicted" and "utterly discredited" by the defendant-officers' body-worn cameras and their cruisers' dashboard cameras. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011).

position it by Joseph's cruiser.[2] As Mattingly did so, Cantu stood up and pointed his gun towards Joseph and Mattingly, the two officers who fired sixteen rounds at Cantu over the ensuing two-to-three seconds. Cantu was struck five times and fell to the ground on his back. For the next two minutes, the officers ordered Cantu to show his hands and place them on his stomach. Body-camera footage shows Cantu complied.

Once he followed their instructions, the officers approached and handcuffed Cantu. APD Officers Jacob Beirowski and Julian Pardo-Martin[3] began administering first aid before Cantu was transported to a hospital where he was later pronounced dead.[4]

Cantu's parents sued, *inter alios*, the APD and seven of its officers—Joseph, Beirowski, Camacho, Mattingly, Pardo-Martin, Peterson, and Knodel. Plaintiffs asserted § 1983 claims against the officers, alleging Fourth Amendment violations for excessive force and Fourteenth Amendment violations for racial profiling and denial of medical treatment. They also asserted a failure-to-accommodate claim against the APD under Title II of the ADA.

Following discovery, the officers and the City sought summary judgment on those claims, and the magistrate judge recommended granting relief in their favor. Plaintiffs timely objected.

---

[2] APD Officer Kyle Peterson arrived on the scene around this time.

[3] Pardo-Martin's name is incorrectly spelled in the complaint as "Padro-Martin." He and Beirowski also entered the scene shortly before the shots were fired.

[4] Pardo-Martin guarded Cantu's hospital room until he was relieved by APD Officer Christopher J. Knodel. Knodel was never present at the scene of the shooting incident.

No. 24-50397

Adopting that recommendation in full, and over Plaintiffs' objection, the district court dismissed all claims on summary judgment. It concluded that the officers were entitled qualified immunity on the § 1983 claims. The court determined that the excessive-force claim remained only as to Camacho and Mattingly and the deadly force they used was reasonable. It further found that the officers did not act with deliberate indifference to Cantu's medical needs. The court also held that the ADA claim failed as a matter of law.[5] Final judgment was entered on February 8, 2024. This appeal followed.

## II.    DISCUSSION

We review grants of summary judgment de novo.[6] Summary judgment is proper where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[7] "A court of appeals need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider 'the facts in the light depicted by the videotape.'"[8]

Plaintiffs' appellate brief only addresses the district court's dismissal of their § 1983 excessive-force claim and their ADA claim. Thus, "[w]e review now only those issues they explicitly preserved for appeal and adequately briefed. We do not address other claims, though, that Plaintiffs

---

[5] After concluding that the APD was not an entity that could be sued, the district court construed Plaintiffs' ADA claim as against the City. This substitution was proper. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313–14 (5th Cir. 1991).

[6] *Carnaby*, 636 F.3d at 187.

[7] Fed. R. Civ. P. 56(a).

[8] *Carnaby*, 636 F.3d at 187 (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

appealed but did not raise in their opening brief. Those claims were abandoned."[9]

## A. § 1983 Excessive-Force Claims

"Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of 'any rights, privileges, or immunities secured by the Constitution and laws.'"[10] "Qualified immunity shields government officials from liability if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[11] "To determine whether a government official is entitled to qualified immunity, we must decide (1) whether a plaintiff has alleged facts sufficient to establish a constitutional violation, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct."[12]

Plaintiffs allege that the defendant-officers violated their son's Fourth Amendment rights by using excessive force. To prevail on an excessive-force claim, a § 1983 plaintiff must establish: "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[13] "An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to

---

[9] *Moore v. LaSalle Mgt. Co.*, 41 F.4th 493, 501 n.2 (5th Cir. 2022).

[10] *Goodman v. Harris County*, 571 F.3d 388, 394–95 (5th Cir. 2009) (quoting 42 U.S.C. § 1983)).

[11] *Allen v. Hays*, 65 F.4th 736, 752 (5th Cir. 2023) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[12] *Winder v. Gallardo*, 118 F.4th 638, 644 (5th Cir. 2024).

[13] *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (quoting *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir.2009)); *see also Moore*, 41 F.4th at 505.

others."[14] "The question is one of 'objective reasonableness,' not subjective intent, and an officer's conduct must be judged in light of the circumstances confronting him, without the benefit of hindsight."[15]

On summary judgment, the district court held that Camacho and Mattingly acted reasonably in response to Cantu's threat.[16] Plaintiffs argue otherwise, contending Cantu was incapacitated by a single shot and thus the officers were clearly unreasonable in continuing their fire, citing *Roque v. Harvel*, 993 F.3d 325 (5th Cir. 2021). Plaintiffs, however, offer no evidence that the first shot incapacitated Cantu. What's more, the officers' body-camera footage establishes that Camacho and Mattingly shot all sixteen rounds within just two-to-three seconds. Their response in a "tense, uncertain, and rapidly evolving" situation was not "clearly unreasonable."[17] We agree with the district court that the officers' use of force was not objectively unreasonable and Plaintiffs failed to demonstrate their son's Fourth Amendment rights were violated.

Even if we found, contrary to our above conclusion, that Camacho and Mattingly violated Cantu's Fourth Amendment rights, they are still entitled to qualified immunity because their "actions were objectively unreasonable in light of clearly established law at the time of the shooting."[18] The law was

―――――――――――――――――

[14] *Ontiveros*, 564 F.3d at 382.

[15] *Manis*, 585 F.3d at 843 (quoting *id.* at 383).

[16] Because Plaintiffs did not argue to the district court or to us that any action by the other APD officers amounted to excessive force, the claims asserted against Joseph, Beirowski, and Peterson are abandoned. *See Moore*, 41 F.4th at 501 n.2.

[17] *Winder*, 118 F.4th at 645 (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).

[18] *Roque v. Harvel*, 993 F.3d 325, 334 (5th Cir. 2021).

well-established, at the time of the shooting, that any reasonable officer would have known that Camacho's and Mattingly's behavior was lawful.[19]

## B. ADA Claim

"[T]he law in this circuit is unequivocal: The ADA 'does not apply to an officer's on-the-street responses to . . . incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life.'"[20] Plaintiffs acknowledge this precedent but argue an issue of material fact exists as to whether the scene was "secure" considering Cantu was the only person in the field.

We disagree. "To require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of *themselves, other officers*, and any nearby civilians, would pose an unnecessary risk to innocents."[21] The APD officers here faced unsecure, exigent circumstances while Cantu brandished his weapon and therefore were under no duty to reasonably accommodate Cantu's mental illness.

\*\*\*

The district court's final judgment is AFFIRMED.

---

[19] *See, e.g.*, *id.* at 325 (noting parties did not dispute reasonableness of police officer's first shot at deceased suspect who disobeyed commands "to put down is gun" and instead "pointed the gun in the officers' general direction"); *Ontiveros*, 564 F.3d at 383–85; *Winder*, 118 F.4th at 638; *Manis*, 585 F.3d at 845–46.

[20] *Allen v. Hays*, 65 F.4th 736, 752 (5th Cir. 2023) (quoting *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000)).

[21] *Hainze*, 207 F.3d at 801 (emphasis added).