E. GRADY JOLLY, Circuit Judge, joined by EDITH H. JONES, Chief Judge, and JERRY E. SMITH, EMILIO M. GARZA, EDITH BROWN CLEMENT, OWEN and JENNIFER WALKER ELROD, Circuit Judges,
dissenting in part and concurring in part:[1]
The provision of Title II that provides a private cause of action for its enforcement reads:
Subject to the provisions of this sub-chapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.
42 U.S.C. § 12132. Although the freewheeling majority opinion seems to bury the narrowness of the question presented in this case,[2] the question is finally at its *241 narrowest and most specific:[3] whether Title II of the ADA provides a private cause of action[4] to enjoin the City to modify its newly constructed or reconstructed sidewalks; the resolution of the question depends on whether a sidewalk is defined as a “service.”[5]
The vagueness of the statute and the imprecision of the regulations allow a decision in this case to become complex and difficult. The choice presented by the court today, however, is clear: the amorphous definition of service offered by the majority or the textual definition that separates a facility from a service. The statute implicitly classifies a noncompliant sidewalk — not as a service — but as a transportation barrier and a facility, and the regulations specifically define a sidewalk as a facility.
If one concludes, as the majority does, that somehow a sidewalk is a “service,” then one concludes that the subject matter of a private cause of action against a public entity under Title II is unlimited; if one concludes that under the ADA a sidewalk is a public “facility,” and that an inanimate and static public facility is distinguishable from a public service, then a private cause of action is thus limited to services and does not extend to facilities.
Finally, and with no apparent discomfort, the majority finds it necessary to recast the issue that Richard Frame has stated for the en banc court. Specifically, Frame states that the sidewalks he seeks to alter constitute a service. The majority says it is not determinative whether a sidewalk is itself a service, because the labor that produced the sidewalk is a service. The majority, however, fails to recognize that the ADA provides a cause of action only if a service is denied “by reason of’ disability.
In other words, the majority’s alternative argument necessarily assumes that the plaintiffs were denied access to the service of the city’s labor force on account of their respective disabilities. This assumption ignores that the city’s labor ser *242 vices are not accessible to the general population as a whole; that is to say that no individual — able bodied or disabled— can commandeer the labor force of a city to construct or reconstruct any facility, sidewalk or otherwise. In short, neither facts, nor policies, nor law, supports granting the plaintiffs a right of access to the city’s labor force.
For these reasons, and for the reasons that follow, I respectfully dissent.
I.
The bottom-line question presented for en banc consideration is whether private plaintiffs generally have a cause of action to require the city to reconstruct sidewalks built or repaired after January 26, 1992 (the effective date of the ADA). The question is resolved by the following analysis.
First, Title II's anti-discrimination provisions do not specifically provide that a private cause of action may be brought against a municipality to enforce ADA-compliant sidewalk construction or reconstruction. Second, although the regulations that accompany the ADA address sidewalk construction and reconstruction, see 28 C.F.R. § 35.149-151,[6] regulations are not privately enforceable unless they effectuate a statutory mandate, because “private rights of action to enforce federal law must be created by Congress.” Alexander v. Sandoval, 532 U.S. 275, 286, 121 5.Ct. 1511, 149 L.Ed.2d 517 (2001). That is, as applicable in this case, the statute does not guarantee access to facilities, but only to “services, programs, or activities.”
Third, the ADA mandates equal access to governmental services, and it therefore provides a disabled individual with a private cause of action if he is being effectively denied meaningful access to a service. See Alexander v. Choate, 469 U.S. 287, 301, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) (stating in the context of the Rehabilitation Act that a benefit cannot be offered in a way that “effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled”). Fourth, the question of whether the plaintiffs have a private cause of action to enjoin the City to construct or reconstruct a sidewalk is resolved by determining whether a sidewalk constitutes a service. Fifth, the ADA does not define “service” in specific terms.
Sixth, turning to examine the statute and regulations for guidance, we see that the statute suggests that sidewalks constitute either a barrier to transportation, or a facility, or both. See 42 U.S.C. §§ 12131(2), 12146-12147. Additionally, the regulations specifically define sidewalks as a “facility.” 28 C.F.R. § 35.104 (“Facility means all or any portion of ... roads, walks, [and] passageways ....”) (emphasis added). Furthermore, the regulations draw a distinction between services and facilities at the behest of Congress: DOJ is required to model the relevant regulations after the “regulations and analysis as in part 39 of title 28 of the Code of Federal Regulations^]” see 42 U.S.C. § 12134(b), which differentiate “program[s] or activities]” from “facilities.” 28 C.F.R. § 39.150.
Seventh, in the light of the statute and regulations, there is no mandate for accessibility to facilities; on the other hand, there is the express mandate of the statute and the regulations to universal accessibility of services, programs, and activities. Stated differently, facilities are specifically excluded from the access demands of the private cause of action provided in Section 12132. Because a sidewalk is a facility— *243 not a service — the sidewalk regulations are privately enforceable only if an inaccessible sidewalk effectively denies a disabled individual meaningful access to a public service. Although the majority holds that the wheelchair-disabled have no rights of access to a sidewalk constructed or last repaired before 1992, irrespective of whether that sidewalk effectively denies a disabled person access to a city’s services, this dissent would hold that if a noncompliant sidewalk effectively denies meaningful access to a service available to the general public, there is a private cause of action.
II.
This dissent now moves to consider these points more fully. We begin by again noting that the ADA provides that “no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of’ public services. 42 U.S.C. § 12132.
A.
Even though the statute does not explicitly define the term “services,” the statute makes a few suggestions to aid our interpretation of the term.[7] First, Title II deals with “transportation barriers,” which include unfriendly sidewalks. Specifically, a “qualified individual with a disability” is defined as a disabled individual “who, with or without ... the removal of architectural, ... or transportation barriers ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities ...” 42 U.S.C. § 12131(2) (emphasis added). Thus, we get some indication as to the meaning of services by reference to what services are not. Obviously, the noncom-pliant sidewalks are alleged by the plaintiffs to be barriers to transportation for the wheelchair disabled. Consequently, it is plain that transportation barriers are treated as barriers to accessing a service, and that sidewalks are not classified as a service.
We are not alone in reaching the conclusion that transportation barriers are distinguishable from services: the Supreme Court has held that the necessary implication of Section 12131(2) is that in some circumstances, local governments must “remove architectural and other barriers to [the] accessibility [of judicial services].” Tennessee v. Lane, 541 U.S. 509, 531, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004). Thus, if transportation barriers, i.e., facilities, and services are coextensive as the majority argues, the ADA requires local governments to “remove” services, i.e., transportation barriers, so that disabled individuals will have access to services. This is the nonsensical reading that follows from the majority’s reasoning; we should strive to avoid such absurdity. See Dunn-McCampbell Royalty Interest, Inc. v. Nat’l Park Serv., 630 F.3d 431, 439 (5th Cir. 2011).
In sum: although Title II of the ADA does not define services in express terms, *244 it tells us that a service is not an inaccessible sidewalk, which is instead treated as a facility that is a barrier to access of a public service.
B.
We continue to look to the statute for guidance on what a service is not, but we now turn to Part B of Title II, which deals not with public services generally, but with the specific subset of public transportation services. See generally 42 U.S.C. §§ 12141-12165. Within this part, Congress required that local governments make accessible their new and altered facilities, but only those that are “to be used in the provision of designated public transportation services ...” 42 U.S.C. § 12146.[8] Thus, as the majority concedes, the ADA explicitly requires facilities to be made accessible in (and only in) “the unique context of ‘designated public transportation services’ ....” Majority Op. at 228 (emphasis added).
Given that the statute requires that facilities be accessible to disabled individuals only in this limited context, it is plain that, despite the majority’s argument to the contrary, facilities are not merely a “subset of services.” See Majority Op. at 234-35 (“DOJ has filed an amicus brief confirming that newly built and altered sidewalks ‘are a subset of services, programs, or activities,’ ... DOJ’s amicus brief corroborates our own analysis .... ”). I reiterate: under the ADA, disabled individuals shall not “be excluded from participation in or be denied the benefits of’ public services. 42 U.S.C. § 12132. Thus, all services must be made accessible in all contexts. Again, the primary implication of Sections 12146 and 12147 is that facilities need only be made equally accessible in the specific and limited context of “designated public transit services.” Thus, because facilities are not subject to the universal equal accessibility requirement, they are not — as the majority argues— enfolded within the term services.
Moreover, relevant precedent teaches that when Congress included the term “facilities” in Sections 12146 and 12147, it indicated that it had purposefully excluded that term from the private cause of action included in Section 12132. See Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (“[Wjhere Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.”) (alteration in original); see also Ott v. Johnson, 192 F.3d 510, 513 (5th Cir.1999) (“It is a fundamental tenet of statutory construction that Congress intended to exclude language included in one section of a statute, but omitted from another section.”). Thus, we should reject the majority’s argument that the use of the term facilities in Sections 12146 and 12147 demonstrates that Congress intended to include the term facilities in Section 12132.[9]
*245 To sum up, Section 12132 provides a private cause of action when disabled individuals are denied access to public “services, programs, or activities.” See 42 U.S.C. § 12132 (Requiring local governments to provide equal access to its “services, programs, or activities .... ”). The use of three — and only three — terms indicates the statute was intended to have a structured meaning. Congress could easily have expressed its intent to prohibit local governments from denying disabled individuals equal access to all “facilities, services, programs, or activities.” It did not. Instead, it required that local governments make their facilities accessible only in the context of transportation services.
Thus, the ADA, without explicitly defining the term services, identifies two things that a service is not: a transportation barrier and a facility. Applying those distinctions here, it seems that under the statute itself, a noncompliant sidewalk is a transportation barrier and that sidewalks in general, are — like other static, inanimate, immobile infrastructure — facilities.
III.
We now turn to the regulations to resolve any remaining doubt that facilities are distinguishable from services.
A.
Although the majority turns to the regulations hoping to smooth off the rough incongruities of its statutory interpretation of “service” as unambiguous, the regulations, for the reasons below, actually — and compellingly — suggest that a sidewalk itself does not constitute a service.
First, the regulations define and designate a sidewalk as a “facility” — not as a “service, program, or activity.” 28 C.F.R. § 35.104 (“Facility means all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property .... ”).
Second, the regulations mirror the statute and require that all services shall be accessible to the disabled. 28 C.F.R. § 35.130(a) (“No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.”).
Third, the regulations further provide that no disabled individual “shall, because a public entity’s facilities are inaccessible ... or unusable ... be excluded from participation in, or be denied the benefits of the services, programs, or activities .... ” 28 C.F.R. § 35.149 (emphasis added). Thus, under the regulations, as under the statute, all services are mandated to be accessible, but facilities, e.g., sidewalks, may remain inaccessible — a crucial distinction that tells us, contrary to the majority’s assertion, that facilities and services are two distinctly separate categories under Title II. See 42 U.S.C. § 12132 (“[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity .... ”); see also 28 C.F.R. § 35.130 (“No qualified individual with a disability shall, on the basis of disability, be excluded from participation *246 in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.”). Stated differently, under Section 35.149, a city violates the law by having inaccessible facilities only if those facilities deny disabled individuals access to a service.
Fourth, the regulations further provide that a city is not “[njecessarily require[d] ... to make each ... existing facility] accessible to and usable by individuals with disabilities.” 28 C.F.R. § 35.150.[10] Indeed, a municipality is granted the discretion to choose how best to make its services accessible; “alteration of existing facilities and construction of new facilities” is merely one potential method. 28 C.F.R. § 35.150(b)(1). Still further, if a city elects to provide access to its services by making “structural change[s] to facilities[,]” that city must “develop ... a transition plan setting forth the steps necessary to complete such changes[,]” and the plan must “include a schedule for providing curb ramps ... giving priority to walkways serving entities covered by the Act ....” 28 C.F.R. § 35.150(d)(l)-(2). If sidewalks are — as the majority urges— services, one would abandon good sense to say — as the regulations would then say— that local governments should focus their reconstruction efforts on services, services that “serve entities covered by the Act” because the sidewalks would themselves be “entities covered by the Act.”
Finally, the regulations require only that a city make newly constructed or reconstructed sidewalks handicapped-accessible. 28 C.F.R. § 35.151. As we have said more than once, all services of the city must be made accessible; if the regulations characterized sidewalks a service, no sidewalk would be allowed to be inaccessible. Section 35.151 is not privately enforceable unless it effectuates a statutory mandate. Here, the statutory mandate, requiring accessibility for the disabled, specifically omits facilities. “[Pjrivate rights of action to enforce federal law must be created by Congress.” Sandoval, 532 U.S. at 286, 121 S.Ct. 1511. This principle means that agencies, as well en banc courts, cannot “conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer’s apprentice but not the sorcerer himself.” Id. at 291, 121 S.Ct. 1511. Because — as discussed at length above — the statute mandates access to services, not facilities, Section 35.151’s requirements are not enforceable in a private suit, but instead are left to other enforcement mechanisms as might be employed by the Attorney General.
In short, the regulations expressly define sidewalks as facilities, not as services. And, furthermore, by requiring that all services be made accessible, while requir *247 ing facilities to be made accessible only in specific and limited circumstances, the regulations are compelling that a facility— such as a sidewalk — is not a service.
B.
Nor is the regulatory distinction between “facilities” and “services” the result of oversight, mistake, or confusion, but derives from congressional mandate. Indeed, Congress directed that the regulations differentiate between facilities and services.
The ADA — statutorily and specifically— requires that the DOJ regulations regarding “ ‘program accessibility, existing facilities,’ ... be consistent with regulations and analysis as in part 39 of title 28 of the Code of Federal Regulations.” 42 U.S.C. § 12134(b). The regulations at part 39 of title 28 implementing the Rehabilitation Act draw a distinction between facilities on the one hand and programs and activities on the other. See 28 C.F.R. §§ 39.149-50.[11] The majority would do well to understand this point: Congress was well aware that the regulations implementing the Rehabilitation Act do not require facilities — unlike programs and activities — to be accessible, and it dictated that the same rule be made applicable to the ADA. See 42 U.S.C. § 12134(b).[12]
The statute further requires that the regulations regarding new and altered facilities track the language from the “coordination regulations under part 41 of title 28, Code of Federal Regulations.... ” 42 U.S.C. § 12134(b). The majority correctly argues that the “regulations that Congress sought to replicate under Title II require new and altered facilities, including sidewalks, to be accessible in most circumstances.” Majority Op. at 228 (emphasis added). The majority’s wobble, i.e., “most,” proves the point. If facilities, i.e., sidewalks, are services, they must be equally accessible in all circumstances, not in “most circumstances.” 42 U.S.C. § 12132 (“[A/]o qualified individual with a disability shall ... be excluded from participation in or be denied the benefits of the services, programs, or activities, ....”) (emphasis added). Thus, the fact that, pursuant to Congress’s direct instructions, the regulations require only that new — but not all — facilities be accessible in most— but not all — circumstances again suggests that “facility” is not a term that replicates the statutory term “service.”[13] The clear mandate of the ADA is the unequivocal right of access to services, programs, and activities, and Congress required that the regulations clarify that this private right of *248 action to demand access does not extend to facilities, a term not mentioned in § 12132.
IV.
This dissent associates with impressive company in recognizing that the statute and regulations, when read together, provide flexibility with respect to facility repair, while requiring that all services be made accessible: the Supreme Court and a distinguished circuit court of appeals have recognized that the proper focus of the ADA is access to services, not access to facilities, and that local governments are given discretion as how best to make services accessible.
A.
First, the Supreme Court has placed particular emphasis on the flexibility granted to local governments under the regulations, saying that “a public entity may comply with Title II by adopting a variety of less costly measures, including relocating services to alternative, accessible sites and assigning aides to assist persons with disabilities in accessing services.” Lane, 541 U.S. at 532, 124 S.Ct. 1978. It is worth reemphasizing the Court’s language: local governments may decide whether, as a matter of policy, to “relocate] services to alternative, accessible sites .... ” See id. (emphasis added). This insight strongly suggests that sidewalks are not services: Must the majority be told that sidewalks are not likely to be relocated to another site?
Notwithstanding Lane’s suggestion that sidewalks are not services, the majority insists that Lane supports its position that facilities are services, and thus the plaintiffs here have a private cause of action even if sidewalks are considered facilities. Majority Op. at 232 (“The Supreme Court’s use of DOJ’s regulations to illustrate the scope of Title II’s reasonable modification [of facilities] requirement is a good indication that those regulations simply apply Title II’s nondiscrimination mandate.”). This “good indication” is not at all what Lane indicates. The services at issue in Lane, as the Court made clear, were “judicial services”; for our purposes, the important point is that the Court never so much as intimated that the facility — that is, the courthouse — was a service at issue. 541 U.S. at 531, 124 S.Ct. 1978. The courthouse was merely the means of accessing the services related to legal matters offered by the government.
It is easy enough to apply Lane’s explication of the regulations to sidewalks. If a service is provided in a particular building, and that building is inaccessible to the wheelchair disabled because of noncompliant sidewalks, the governmental entity has various options. Among these: it might move the service to another facility that is supported by accessible sidewalks, or it might repair the sidewalks around the original building. The point is this: the local government is allowed to decide how to address the issue of inaccessibility of a service, so long as it provides some appropriate remedy. Thus, the Supreme Court has implicitly recognized that because it is within the city’s discretion of how and when to reconstruct existing facilities and infrastructure, facilities are not services, and the statute therefore excludes this private cause of action.
B.
The First Circuit has also recognized that facilities are relevant in the ADA context only in their capacity as a gateway to a service, and that the focus of the ADA is on access to services, programs, and activities. See Iverson v. City of Boston, 452 F.3d 94, 99-100 (1st Cir.2006); Parker v. Universidad de Puerto Rico, 225 F.3d 1, *249 6-7 (1st Cir.2000).[14] In Parker, the court clarified the accessibility requirements applicable to the Monet Garden, a site located within the Botanical Gardens of the University of Puerto Rico, where the University provided the service of hosting group events. 225 F.3d at 6. The court noted the regulatory distinction between facilities and services, and said that Title II focuses on “ ‘program accessibility’ rather than ‘facilities accessibility’ ... to ensure broad access to public services, while, at the same time, providing public entities with the flexibility to choose how best to make access [to services] available.” Id. The court then noted that although the government was required to “provide at least one route that a person in a wheelchair can use to” access the various ceremonies hosted at the Monet Garden, the government was not required to reconstruct “every passageway[.]” Id. at 7.
At least two other circuits have drawn a distinction between facilities and services in the context of courthouse access for disabled persons. See Shotz v. Cates, 256 F.3d 1077, 1080 (11th Cir.2001) (“[Plaintiffs] allege that the wheelchair ramps and bathrooms at the courthouse impede their ability to attend trials .... A trial undoubtably is a service ... within the meaning of § 12132.”); Layton v. Elder, 143 F.3d 469, 473 (8th Cir.1998) (“[I]f the county intends to continue using the county courthouse to provide services ... it must make ... the building accessible to individuals with disabilities .... ”).
Notably, these holdings fit squarely within this dissent’s view of the statute and the regulations. To reiterate, we should hold that private plaintiffs have a cause of action when inaccessible sidewalks deny meaningful access to a public service.
V.
Finally, we turn to address the majority’s attempt to reframe the issue presented, and to thereby shift our focus from the actual sidewalks that the plaintiffs seek to modify, to the labor services employed to construct those sidewalks. Of course, this effort reflects the majority’s recognition that a static, immovable, and inanimate piece of concrete is not a service — not only in terms of normal thinking, but as established by the statute, the regulations, and the common definitions of the term. This argument has lately been advanced to the front lines of the majority’s interpretative theories, notwithstanding that the plaintiffs stated the question in their en banc brief to be:
Whether the trial court, consistent with Congress’ intent, Department of Justice (“DOJ”) interpretations, and numerous precedents, correctly ruled that the sidewalks of Arlington, Texas are a “service, program, or activity” within the meaning of Title II of the ADA.
(Emphasis added).
Thus, the majority alternatively contends that even if concrete does not constitute a service, “building and altering sidewalks are services, programs, or activities ....” Majority Op. at 226 (emphasis added).
This alternative argument leaves unaddressed that, under Section 12132 the denial of the construction worker’s “service” must be by “reason of disability,” that is, the disability must preclude access to the *250 service of the labor of public employees. Furthermore, the argument falsely assumes that the public generally is provided access to commandeer the service of governmental employees. Here, for example, the non-disabled citizens have no individual right to direct the services of public construction workers to any construction project, including a sidewalk. An illustration, which is perhaps apt to our understanding, is that although the legal department of a city provides legal services in the public interest and on public matters, those public services are not available to the public at large and are not denied to the disabled by reason of their disability.
The majority vigorously contends, and we do not disagree, that Congress passed the ADA with the aim of granting disabled citizens the same access to public services that able-bodied citizens enjoy; but the majority does not contend that the ADA provides disabled individuals with greater access to public services. Plainly said, no citizen has access to a city’s labor force for the construction of a sidewalk. So, surely, any denial of access to the sidewalk construction crew cannot be “by reason of ... disability.”[15]
Thus, the majority is demonstrably incorrect when it insists that it does not matter how broadly we analyze the statute. See Majority Op. at 226 (“[W]e believe this case does not turn on how we frame the issue.”) The proper question is whether a sidewalk is itself a service. The answer is that it is not.
VI.
From reading the majority opinion and this dissent, it is evident that the statute has not been drawn with preciseness. Nevertheless, this dissent has demonstrated that the statute itself differentiates services from facilities, and has addressed sidewalks only as transportation barriers and facilities, but never as a service. The regulations that implement the statute, however, define sidewalks as a facility. Like the statute, these regulations never refer to sidewalks as a service.
This dissent has thus shown that the majority errs when it conflates services and facilities. This error is further demonstrated because the statute and the regulations allow facilities to be inaccessible to the disabled in many circumstances but require all services to be made equally accessible. Thus, a proper reading of the statute makes clear that facilities and services are treated with distinct and separate meanings. When the statute and regulations are considered as a whole, it should be clear, except perhaps to the most intractable, that Congress never intended for sidewalks to constitute a service, accompanied by a private cause of action.
Finally, this dissent has shown the non-functionality of the majority’s abstract argument that the labor construction services morph into the sidewalk itself.
For the reasons stated above, I respectfully dissent. I would remand to allow the district court to determine whether the plaintiffs can show that particular sidewalks deny access to services that are not otherwise accessible.

. This dissent challenges only the majority’s conclusion that a sidewalk constitutes a service under 42 U.S.C. § 12132.

. For example, the majority asks whether Title II applies to sidewalks. This broad question is not the question before us, and demonstrates the majority's lack of proper focus. Tide II does indeed address sidewalks: it refers to them in their capacity as transportation barriers. Again, the appropriate question is whether Section 12132’s reference to services includes sidewalks.
In a similar vein, the majority contends that the ADA and the Rehabilitation Act are broad statutes aimed at remedying discrimination against disabled individuals. This point does little to aid our analysis concerning private rights of action to enforce the statute.

. Although the issue in this case is now narrowly drawn, the conclusion that the majority advocates leads to consequences beyond this case.

. A private cause of action, of course, is not the only means of enforcing Title II. Title II and the accompanying regulations make clear that local governments bear responsibility in determining how best to make their services accessible, and that the Attorney General has enforcement powers to ensure that the city’s chosen methods result in services being made accessible. 42 U.S.C. § 12134; 28 C.F.R. § 35.101 etseq.
Indeed, according to its publications, the Department of Justice enforces the regulatory requirements of Title II in a variety of ways, including through formal and informal settlement agreements, mediation, and litigation. Enforcing the ADA: A Status Report from the Department of Justice, Issue 2, at 2, available at http://www.ada.gov/aprjunlO.pdf (last visited May 18, 2011). In one particularly wide-ranging effort — Project Civic Access — DOJ enters into agreements with municipalities, counties, and other like units of local government; through this project, DOJ has investigated accessibility in all fifty states and beyond. Project Civic Access, http://www.ada. gov/civicac.htm (last visited May 18, 2011).
Title II incorporates the remedies available under § 505 of the Rehabilitation Act, which incorporates the "remedies, rights, and procedures set forth in Title VI of the Civil Rights Act of 1964 for violations of § 504 of the Rehabilitation Act.” Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 590 n. 4, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999). The available remedies include "termination or denial of federal funds.” Id.

.The Rehabilitation Act applies only to programs and activities, but it defines these terms as “all of the operations ... of a local government." 29 U.S.C. § 794. A sidewalk, which is an inanimate, static piece of concrete, does not constitute an "operation.” Thus, we can safely conclude that a sidewalk is neither a program nor an activity.

. We follow the majority’s lead and cite to the regulations in place at the time the plaintiffs petitioned for, and were granted, rehearing en banc. See Majority Op. at 228 n. 51.

. The majority relies primarily on dictionary definitions to support its argument that a sidewalk is a service. It is therefore somewhat peculiar that the majority relies on several definitions that establish that sidewalks are not services. For example, the majority notes that a service is "the performance of work commanded or paid for by another, or an act done for the benefit or at the command of another.” Majority Op. at 226 (internal citations and quotation marks omitted) (emphasis added). It must be obvious to the majority that a sidewalk neither “performs work” nor “acts;” it is an inanimate object. Similarly, the majority's argument that a sidewalk “is the ‘apparatus' that meets the public's general demand for safe transportation[,]” majority op. at 227, misses the point; there, the service is transportation, not the facility of the sidewalk itself.

. In this context,
"designated public transportation” means transportation (other than public school transportation) by bus, rail, or any other conveyance (other than transportation by aircraft or intercity or commuter rail transportation (as defined in section 12161 of this title)) that provides the general public with general or special service (including charter service) on a regular and continuing basis.
42 U.S.C. § 12141(2).

. The Rehabilitation Act further' confirms that Congress purposely differentiated facilities and services, as that Act provides the same distinction. See 29 U.S.C. § 794(c) ("Small providers are not required ... to make significant structural alterations to their existing *245 facilities for the purpose of assuring program accessibility, if alternative means of providing the services are available.”) (emphasis added). It is unsurprising that the Rehabilitation Act repeats the differentiation found in the ADA; as the majority points out, the two statutes are interpreted in pari materia. See Hainze v. Richards, 207 F.3d 795, 799 (5th Cir.2000).

. "A public entity may comply with the requirements of this section through such means as redesign or acquisition of equipment, reassignment of services to accessible buildings, assignment of aides to beneficiaries, home visits, delivery of services at alternate accessible sites, alteration of existing facilities and construction of new facilities, use of accessible rolling stock or other conveyances, or any other methods that result in making its services, programs, or activities readily accessible to and usable by individuals with disabilities. A public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance with this section.” 28 C.F.R. § 35.150(b)(1) (emphasis added). The standard for new or altered facilities is more stringent: each facility that is built after January 26, 1992 must be made "readily accessible,” and each facility that is altered after that date must be made accessible "to the maximum extent feasible.” 28 C.F.R. § 35.151(a)-(b). The question before us, of course, is whether these requirements are enforceable through a private cause of action.

. Services are not addressed in these regulations because the Rehabilitation Act applies only to programs or activities.

. As an aside, it is unsurprising that the Rehabilitation Act does not require facilities to be made accessible; as already noted, the Rehabilitation Act applies to operations, not to inanimate objects. 29 U.S.C. § 794(b).

. The majority seems to argue that the statute and regulations grant governmental entities discretion such that they need not make some services accessible. This is a misreading of the statute and the regulations as to accessibility of services, programs, and activities. As discussed above, the statute itself provides no exception to access. Moreover, although the regulations do, as the majority notes, grant a measure of relief to municipalities that are able to demonstrate that providing access in a particular milieu will result in an undue burden, the regulations further provide that the local government must, even after making this showing, "take any other action that would not result in ... such burdens but would nevertheless ensure that individuals with disabilities receive the benefits or services ...” 28 C.F.R. § 35.150(a)(3). In other words, the local government must make the service accessible; it may not be required to do so in the way that a private plaintiff deems most appropriate.

. It is certainly true, as the majority eagerly points out, that several other circuits have decided that private plaintiffs have a cause of action to enforce the ADA sidewalk regulations, but the majority — given its failure to acknowledge what the First Circuit has said — ■ would apparently suggest that the viewpoint it urges'is the only viewpoint among the other circuits.

. For the same reasons, we can safely reject the majority’s argument that the Rehabilitation Act provides the plaintiffs with a private cause of action to seek access to the services provided by the city's labor force. See 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity----”) (emphasis added).